UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

LAVAN CORTEZ JOHNSON,                )
                                     )
                Petitioner,          )
                                     )
        v.                           )        Case No. 1:22-cv-00150-SNLJ
                                     )
UNITED STATES OF AMERICA,            )
                                     )
                Respondent.          )

## MEMORANDUM AND ORDER

This matter is before the Court on petitioner Lavan Cortez Johnson's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. For the reasons stated below, the Court will deny the motion without an evidentiary hearing because the record conclusively establishes that petitioner is not entitled to relief.

## I. BACKGROUND

Johnson was indicted by the Grand Jury for the Eastern District of Missouri on May 14, 2019, and charged with one count of Conspiracy to Distribute 500 grams or more of a mixture or substance containing methamphetamine and one count of Distribution of 50 grams or more of a mixture or substance containing methamphetamine in violation of Title 21, United States Code, Sections 841(a)(1) and 846. *United States v. Johnson*, 1:19cr-00088-SNLJ (E.D.Mo.), Doc. 1.[1]

---

[1] All citations to the record refer to the underlying criminal case, *United States v. Johnson*, 1:19-cr-00088-SNLJ (E.D.Mo), except as otherwise noted.

### *Written Guilty Plea Agreement*

Johnson pled guilty pursuant to a written guilty plea agreement with the government. Doc. 60. Under the plea agreement, Johnson stipulated and agreed to the following facts: On September 17, 2018, investigators interviewed an individual (CS-2), who informed them that he/she has known Lavan Johnson for approximately three years. *Id.* at 3. CS-2 advised he/she was introduced to Johnson by a mutual friend known as "Sonny," Robert Lee Arnold. *Id.* CS-2 advised that Arnold lived at a residence owned by Johnson on Hawthorn Road in Cape Girardeau, Missouri, and that Arnold sold drugs from that residence for Johnson. *Id.* Additionally, CS-2 advised in August of 2018 he/she met with Johnson, who provided him/her with a backpack containing cocaine and methamphetamine and instructed him/her to transport it to "Sonny" at the Hawthorn address in Cape Girardeau, Missouri. *Id.*

On September 19, 2018, CS-2 conducted a controlled drug purchase from Arnold at the Hawthorn address. *Id.* During the transaction, Arnold contacted Johnson on a cell phone to seek Johnson's approval for the transaction. *Id.* CS-2 spoke with Johnson on the phone to negotiate the price. *Id.* Arnold then provided the drugs to the CS-2. *Id.* The drugs were tested at the Missouri State Highway Patrol Crime Laboratory and determined to be 111.41 grams of a mixture or substance containing methamphetamine. *Id.*

On January 25, 2019, CS-2 and a DEA Agent, acting in an undercover capacity, met with Johnson at his residence in Cape Girardeau, Missouri. *Id.* at 4. After some discussion, Johnson left the residence in a black 2015 Kia Optima SX automobile registered to him. *Id.* Johnson returned in the Kia a few minutes later carrying a grocery

type bag. *Id.* Johnson gave the bag to the Agent, who observed that there was approximately one pound of methamphetamine inside the bag. *Id.* The Agent paid Johnson $5,000.00 for the drugs and left the residence. *Id.* The drugs were tested at the Crime Laboratory and determined to be 448.18 grams of a mixture or substance containing 419 grams of actual methamphetamine. *Id.*

By executing the written plea agreement, Johnson "admit[ted] to voluntarily and intentionally participating in an agreement or understanding to knowingly distribute 500 grams or more of a mixture or substance containing methamphetamine with others, and to voluntarily and intentionally distributing methamphetamine. *Id.* He also acknowledged that he "voluntarily entered into both the plea agreement and the guilty plea and that the guilty plea is made of [his] own free will and that [he] is, in fact, guilty. *Id.* at p. 11.

The possible penalties were set forth in the plea agreement as follows:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty in Count I is imprisonment of not more than life, a fine of not more than $10,000,000.00, or both such imprisonment and fine. The Court "shall" also impose a period of supervised release of at least five (5) years. The defendant fully understands that the crime to which a guilty plea is being entered requires a mandatory minimum term of imprisonment of at least ten (10) years.

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty in Count III is imprisonment of not more than forty (40) years, a fine of not more than $5,000,000.00, or both such imprisonment and fine. The Court "shall" also impose a period of supervised release of at least four (4) years. The defendant fully understands that the crime to which a guilty plea is being entered requires a mandatory minimum term of imprisonment of at least five (5) years.

*Id.* at 4-5.

3

Finally, the plea agreement contained the following language:

> The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

*Id.* at 10.

### *Change of Plea Hearing*

On January 6, 2020, Johnson appeared with his attorney for a change of plea hearing pursuant to the written guilty plea agreement.  Doc. 59.  He was placed under oath and advised that his answers were subject to the penalties of perjury if he did not answer truthfully.  Doc. 114, p. 3.  During the plea colloquy, the Court asked Johnson if he had read and understood the plea agreement:

| Court: | The lawyers have given me this written guilty plea agreement consisting of 12 pages. And I see that you and the lawyers have signed it at the bottom of 11, top of 12; is that right? |
|---|---|
| Johnson: | Yes, sir. |
| Court: | Have you read the agreement? |
| Johnson: | Yes, sir. |
| Court: | Have you gone over it in detail with your lawyer? |
| Johnson: | Yes, sir. |
| Court: | Has he explained the contents of the agreement in detail to you? |
| Johnson: | Yes, sir. |

4

| Court: | And do you understand the contents of the agreement? |
|---|---|
| Johnson: | Yes, sir. |
| Court: | Is there anything in here that you do not understand? |
| Johnson: | No, sir. |

*Id.* at 6-7.

The Court also covered the possible range of penalties with Johnson prior to accepting his plea of guilty:

| Court: | For count 1 the penalty is imprisonment of up to life, a fine of up to $10 million or a combination of imprisonment and fine. After your release, there would be a period of supervised release of at least five years, and there's a mandatory minimum term of imprisonment of at least 10 years. Do you understand that part? |
|---|---|
| Johnson: | Yes, sir. |
| Court: | And then on count 2 the penalty is up to 40 years in prison, a fine of up to $5 million or, again, a combination of imprisonment and fine. A period of supervised release would be at least four years. And there's a mandatory minimum term on count 2 of at least five years. Do you understand all that, then? |
| Johnson: | Yes, sir. |
| Court: | Now, I am going to consider the full range of punishment, which is 10 years minimum to life maximum on count 1; and five years minimum to 40 years maximum on count 2. Do you understand that? |
| Johnson: | Yes, sir. |
| Court: | And the sentence to be imposed will be in my discretion within those two ranges of punishment. Do you understand that too? |
| Johnson: | Yes, sir. |

| Court: | Has anyone told you or promised you what sentence you'll receive in the case? |
|---|---|
| Johnson: | No, sir. |

*Id.* at 10-11.

During the plea hearing, the prosecutor recited the factual basis for the guilty plea. *Id.* at 12-14. The Court then asked Johnson whether he agreed with the factual basis:

| Court: | Have you heard the statements from the prosecutor? |
|---|---|
| Johnson: | Yes, sir. |
| Court: | Is everything he said true and correct? |
| Johnson: | Yes, sir. |
| Court: | Do you admit that you did all those acts he described? |
| Johnson: | Yes, sir. |
| Court: | There's no question about it, is there? |
| Johnson: | No, sir. |

*Id.* at 14. Thereafter, under further questioning by the Court, Johnson admitted he was guilty of each element of the charged offenses. *Id.* at 14-15.

The Court also made inquiry as to Johnson's level of satisfaction with his attorney prior to accepting his guilty plea:

| Court: | Because this is a criminal case you're entitled to effective representation from a lawyer at each stage of the proceedings against you. Do you understand? |
|---|---|
| Johnson: | Yes, sir. |

| | | |
|---|---|---|
| Court: | So with that in mind I'll ask you are you satisfied with the way your lawyer has handled your case? |
| Johnson: | Yes, sir. |
| Court: | Has he investigated the case to your satisfaction? |
| Johnson: | Yes, sir. |
| Court: | Has he done everything you've asked him to do? |
| Johnson: | Yes, sir. |
| Court: | No gripes or complaints whatsoever? |
| Johnson: | No, sir. |

*Id.* at 4.

### *Presentence Investigation Report*

In the Presentence Investigation Report (PSR), the base offense level was reported to be 32 due to the amount of drugs involved in the charged offenses.  Doc. 108, ¶ 26. Two levels were added pursuant to USSG § 2D1.1(b)(12) as Johnson had maintained a premises for the purpose of storing and distributing controlled substances, and another two levels were added pursuant to USSG § 3B1.1(2) as Johnson was an organizer / leader of the criminal activity.  *Id.* at ¶ 27, 29.

Because Johnson had prior countable convictions for possession of a controlled substance with intent to distribute and distribution of a controlled substance, he was determined to be a career offender under USSG § 4B1.1, and the offense level was determined to be 37 – one level higher than his adjusted offense level would have been based on the drug quantity and applicable Chapter 2 enhancements.  *Id.* at ¶ 32.  Johnson

7

received a three-level reduction for acceptance or responsibility and timely notification of his intent to plead guilty. *Id.* at ¶ 33, 34. Johnson's total offense level was determined to be 34. His criminal history category was determined to be VI pursuant to USSG § 4B1.1(b) based on the career offender status. *Id.* at ¶ 66. With a total offense level of 34 and a criminal history category of VI, the guideline imprisonment range is 262 to 327 months. *Id.* at ¶ 96.

### *Sentencing Hearing*

On September 22, 2020, Johnson appeared with his attorney for sentencing. Doc. 115. He objected to the PSR based on an argument that one of his predicate felony drug offenses did not qualify him for career offender treatment. Doc. 130, p. 2-3. Counsel acknowledged, however, that under current Eighth Circuit law the enhancement applied. *Id.* The Court overruled the objection based on the binding precedent.

The government recommended a sentence of 209 months, while defendant proposed a sentence of 180 months. The Court sentenced Johnson to 180 months incarceration concurrent as to each count, which was below the guideline imprisonment range, by way of a downward variance. Docs. 115, 116, 130.

### *Appeal*

On direct appeal, Johnson argued that the Court erred in denying his objection to the application of the career offender guideline. The Eighth Circuit affirmed, noting there was binding precedent that foreclosed his argument. *United States v. Cortez-Johnson*, 860 Fed. Appx. 94 (8th Cir. 2021).

Johnson filed the instant § 2255 motion in a timely manner, advancing claims of ineffective assistance of counsel.

## II. LEGAL STANDARDS

### 28 U.S.C. § 2255

Pursuant to 28 U.S.C. § 2255, a federal prisoner may seek relief from a sentence imposed against him on grounds that "the sentence was imposed in violation of the Constitution or law of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack."  28 U.S.C. § 2255.  Section 2255 is not designed to provide a remedy for "all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979).  To obtain relief under § 2255, the petitioner must establish a violation constituting "a fundamental defect which inherently results in a complete miscarriage of justice."  *United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003) (quoting *United States v. Boone*, 869 F.2d 1089, 1091 n.4 (8th Cir. 1989)). The petitioner bears the burden of proof as to each asserted ground for relief.  *Golinveaux v. United States*, 915 F.3d 564, 567 (8th Cir. 2019).

A petitioner is entitled to an evidentiary hearing on a § 2255 motion unless "the motion, files, and records of the case conclusively show that the movant is not entitled to relief."  *Thomas v. United States*, 737 F.3d 1202, 1206 (8th Cir. 2013) (citing 28 U.S.C. § 2255(b)).   The motion "can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently

incredible, or conclusions rather than statements of fact." *Engelen v. U.S.*, 68 F.3d 238, 240 (8th Cir. 1995).

### Ineffective Assistance of Counsel Claims

The Sixth Amendment establishes the right of the criminally accused to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prove a claim of ineffective assistance of counsel, the petitioner must show that his counsel did not perform to the degree of skill of a reasonably competent attorney, and as a result, he was prejudiced. *Id.* at 687. Failure to satisfy either of the *Strickland* prongs [performance or prejudice] is fatal to the claim. *Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000) ("If the petitioner makes an insufficient showing on one component, the court need not address both components.").

"*Strickland*'s first prong sets a high bar." *Buck v. Davis*, 580 U.S. 100, 118 (2017). The Court "will not find an attorney's performance constitutionally deficient unless it is outside the "wide range of reasonable professional assistance." *Love v. United States*, 949 F.3d 406, 410 (8th Cir. 2020) (citing *Strickland*, 466 U.S. at 689). "It is only when the lawyer's errors were so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment that *Strickland*'s first prong is satisfied." *Id.* (citing *Buck*, 580 U.S. at 118-119). The Court makes "every effort to eliminate the "distorting effects of hindsight" and consider performance from counsel's perspective at the time." *Id.* (quoting *Strickland*, 466 U.S. at 689). The starting point for this analysis is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Rodela-Aguilar v. United States*, 596 F.3d 457, 461 (8th Cir. 2010) (internal

10

citation omitted).  A petitioner "bears the burden to overcome the strong presumption that counsel's performance was reasonable."  *Thomas v. United States*, 737 F.3d 1202, 1207 (8th Cir. 2013).

A court need not determine whether a movant meets the performance prong of *Strickland*, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice."  *Strickland*, 466 U.S. at 697.  "[T]he prejudice prong requires proof that there is a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different."  *Nave v. Delo*, 62 F.3d 1024, 1035 (8th Cir. 1995) (internal citation and quotation marks omitted).  This inquiry depends on the likelihood of success if the alleged error were corrected."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  Where a claim of ineffective assistance of counsel hinges on the failure of counsel to file a pretrial motion, a petitioner cannot prove prejudice if there is no reasonable probability that the motion would have been successful.  *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000).  Counsel's failure to advance a meritless argument cannot constitute ineffective assistance of counsel.  *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994).

Generally, to establish prejudice where a defendant has entered a guilty plea, "the [m]ovant must show 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"  *United States v. Frausto*, 754 F.3d 640, 643 (8th Cir. 2014) (quoting *Hill*, 474 U.S. at 59).  "While a guilty plea taken in open court is not invulnerable to collateral attack in a post-conviction proceeding, the defendant's representations during the plea-taking carry a strong

11

presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (quoting *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985)). Where the petitioner states on the record that he is satisfied with his lawyer, that no threats or promises had been made to induce him to plead guilty, and admits his guilt, he has a heavy burden to overcome those admissions and show that his plea was involuntary. *Nguyen*, 114 F.3d at 703.

### III. DISCUSSION

In his motion to vacate, Johnson raises ineffective assistance of counsel claims pertaining to the plea and sentencing phases. Specifically, he alleges that counsel provided constitutionally deficient representation by: (1) failing to inform him of the likely consequences of pleading guilty as opposed to proceeding to trial; (2) failing to file any substantive pretrial motions; (3) failing to conduct an adequate and independent pretrial investigation; (4) failing to attempt to negotiate a more favorable plea agreement; and (5) failing to file substantive objections to the PSR. As set forth in detail below, each of these claims fails on the merits.

#### *1) Failure to inform Johnson of the likely consequences of pleading guilty*

Johnson contends his attorney failed to inform him of the relevant circumstances and likely consequences of pleading guilty. He states he relied on counsel's erroneous advice to plead guilty to his detriment. "[A] defendant's reliance on an attorney's mistaken impression about the length of sentence is insufficient to render a plea involuntary as long as the court informed the defendant of his maximum possible sentence." *United States v. Granados*, 168 F.3d 343, 345 (8th Cir.1999); *see also Hollis*

*v. United States*, 687 F.2d 257, 260 (8th Cir. 1982) ("a defendant cannot set aside a guilty plea merely because he relied on his attorney's opinion that the sentence would be a lenient one"). "[A] defendant who pleads guilty has no right to be apprised of the sentencing options outside the statutory maximum and minimum sentences." *Granados*, 168 F.3d at 345. "Where a defendant is invariably informed that the sentencing decision rests solely in the discretion of the trial court, and where the defendant states at the sentencing hearing that he understood the negotiated plea and that there were no promises other than the plea agreement, the plea will not be set aside as involuntary." *Hollis*, 687 F.2d at 260 (internal citations and quotation marks omitted).

The record clearly reflects that Johnson was advised of the possible consequences of a guilty plea and the possible penalties. The possible penalties were set forth in the written plea agreement and were stated by the Court during the plea hearing. Under questioning from the Court at the plea hearing, Johnson stated that he understood the range of punishment and that the sentence to be imposed was within the Court's discretion. He advised the Court that he understood his guilty plea was not in reliance on a particular sentence and "[h]e cannot now be heard to complain that he would not have pled guilty if he had known his sentence would be more severe than his lawyer predicted. He specifically disclaimed that risk at his change of plea hearing." *Bethel v. U.S.*, 458 F.3d 711, 718 (7th Cir. 2006).

Nor was Johnson prejudiced in any respect by his counsel's advice to plead guilty. He alleges the guilty plea was skewed in favor of the government and did not have any benefit for him. This, however, is far from true. Johnson's offense level was 37 prior to

receiving a reduction for acceptance of responsibility, which he would not have received had he gone to trial. If he lost at trial, his base offense level would have been at least a 37, with a criminal history category of VI, for a sentencing guidelines range of 360 months to life.

Based on the record, Johnson has not demonstrated deficient performance by counsel, or that he suffered any prejudice related to counsel's performance. Nor has he established any factual or legal basis to find his plea was involuntary. As such, claim 1 is denied.

### 2) *Failure to file any substantive pretrial motions*

Johnson claims counsel was ineffective by failing to file any substantive pre-trial motions to challenge the strength of the government's case. He insinuates that the failure to file any substantive motions, in and of itself, constitutes ineffective assistance of counsel. He contends counsel should have filed a motion pursuant to Federal Rule of Evidence 404(b), challenged the weight of the drugs and the phone taps evidence, and considered an entrapment defense.

Matters of trial strategy are generally entrusted to the professional discretion of counsel and they are "virtually unchallengeable" in § 2255 proceedings. *Loefer v. United States*, 604 F.3d 1028, 1030 (8th Cir. 2010). Additionally, it is well established that counsel cannot be ineffective for failing to raise issues upon which a defendant would not have prevailed. *United States v. Johnson*, 707 F.2d 317, 320 (8th Cir. 1983) *see also Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994) ("Counsel's failure

to advance a meritless argument cannot constitute ineffective assistance.")

FRE 404(b) requires the Government to provide reasonable written notice before trial when evidence of a crime, wrong, or other act will be used to "prov[e] motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Johnson fails to offer how counsel's failure to file such a motion was prejudicial or otherwise affected his decision as to whether to plead guilty or go to trial.

Additionally, Johnson provides no reason to believe that the crime lab was inaccurate as to the weight of the drugs, and even if it was, it would have had to have been wildly inaccurate to affect his sentencing calculation. Based on the drugs seized during the investigation the converted drug weigh was equivalent to 8,615.62 kilograms of marijuana. Doc. 108, ¶ 26. That amount is almost three times the drug weight necessary, 3,000 kilograms or less, to get Johnson to the next lower base offense level. U.S.S.G. § 2D1.1(c). Further, focusing only on the 419 grams of actual methamphetamine that Johnson sold to the undercover agent on January 25, 2019, the amount would have needed to be 150 grams or less to get Johnson to the next lower base offense level. Counsel is not ineffective for failing to file a motion that he reasonably believes would be futile. *Anderson v. United States*, 762 F.3d 787, 794 (8th Cir. 2014).

Further, a challenge to the evidence gathered under the Court's wiretap order would have been a fruitless pursuit. Johnson does not allege any constitutional or statutory basis for challenging the wiretap, and given the other evidence in the case, even if the wiretap had been suppressed, it would not have changed the outcome. Johnson sold

15

a pound of methamphetamine to an undercover DEA Agent which was video recorded.

The record also reflects that Johnson would not have been able to submit an entrapment defense to the jury, even if he had stood trial. A defendant is entitled to an entrapment instruction only if "there is sufficient evidence from which a reasonable jury could find entrapment." *United States v. Herbst*, 666 F.3d 504, 511 (8th Cir. 2012). An entrapment defense has two elements: first that there was government inducement of the crime, and secondly, a defendant's lack of predisposition to commit the crime. *Id*. "Inducement exists when the government 'implanted the criminal design' in the defendant's mind." *United States v. Young*, 613 F.3d 735, 747 (8th Cir. 2010) (quoting *United States v. Eldeeb*, 20 F.3d 841, 843 (8th Cir. 1994)). If the defendant establishes government inducement to commit the crime, the burden shifts to the government to demonstrate the defendant's predisposition to engage in the crime. *Herbst*, 666 F.3d at 511- 512.

Johnson's attorney was not ineffective for not pursuing an entrapment defense at a trial. The record establishes that Johnson was involved in the drug conspiracy before the undercover agent met with him to purchase methamphetamine. Johnson directed other members of the conspiracy and set prices, which also indicates that he was not induced to commit the crime by the government. Secondly, the record shows, by way of Johnson's involvement in the conspiracy as well as his two prior drug trafficking convictions that he was predisposed to selling drugs before he was approached to sell drugs.

Based on the record, Johnson has not demonstrated deficient performance by counsel, or that he was prejudiced by counsel's failure to file any substantive pre-trial

motions.  Nor do his allegations meet the heavy burden to overcome his admissions during the plea hearing that he was satisfied with the way counsel handled his case, that counsel had investigated to his satisfaction, and that counsel had done everything he had asked him to do.  As such, claim 2 is denied.

### 3) *Failure to conduct an adequate and independent pretrial investigation*

Johnson claims counsel was ineffective by failing to conduct an independent investigation.  To demonstrate prejudice in the context of a failure to investigate, the movant must show specifically what would have been revealed by further investigation and how the additional evidence would have made a different outcome a reasonable probability.  *Palmer v. Clarke*, 408 F.3d 423, 445 (8th Cir. 2005) (movant could not show prejudice because he had failed to demonstrate specifically what further evidence would have been uncovered and how it would have affected the outcome at trial); *U.S. v. Vazquez-Garcia*, 211 F.App'x 544, 546 (2007) (movant failed to provide any independent evidence to the court as to what witness would have allegedly said had been interviewed or called to testify); *Sanders v. Trickey*, 875 F.2d 205, 210 (8th Cir. 1989) (holding that appellant who filed a § 2255 motion but produced no affidavit from the witness in question or any other independent support for his claim failed to show prejudice because he offered only speculation that he was prejudiced by his counsel's failure to interview the witness, which was not enough to undermine confidence in the outcome of the trial, as required by *Strickland*).

Here, Johnson fails to articulate any exculpatory or mitigating evidence that could have been discovered, let alone how that evidence would have affected the guilt or

sentencing phase. He does not identify any witnesses that counsel should have interviewed, or any evidence counsel failed to gather. Instead, he offers nothing more than the conclusory statement that an independent investigation would have provided needed information to assess the strength of the government's case.

Further, where a petitioner claims that his attorney failed to investigate a defense known to him, that claim should be denied without a hearing if the petitioner had previously stated that counsel had investigated the case to his satisfaction. *United States v. Hughes*, 16 F.3d 949, 951 (8th Cir. 1994). In *Hughes*, the defendant, who was attempting to withdraw his plea, had testified at his plea hearing that counsel had not failed or refused to do anything that he had asked him to do and that he was completely satisfied with the manner in which counsel represented him. *Id*. When he later claimed that counsel was ineffective in failing to fully investigate the case, the trial court denied the claim. *Id*. The Court held that "Hughes' failure to assert any objections to counsel's performance at his change of plea hearing 'refutes any claim of ineffective assistance of counsel as a basis for withdrawing his plea.'" *Id*. (quoting *United States v. Abdullah*, 947 F. 306, 312 (8th Cir. 1991).

Under questioning by the Court at the plea hearing, Johnson testified that he was satisfied with the way counsel handled his case, that counsel had investigated to his satisfaction, and that counsel had done everything he had asked him to do. As such, this claim is foreclosed under *Hughes*.

Moreover, the evidence against Johnson was simply overwhelming. Fundamentally, there was not a valid defense to pursue at trial that would have had a

reasonable probability of resulting in an acquittal, and his attorney wisely advised him to take the plea offer. During the plea hearing, Johnson acknowledged that the evidence in his case was in fact true and correct. And, during the sentencing hearing, Johnson stated, "I accept my responsibility in what I've done …. Like true enough I'm guilty. We all know that I'm guilty." Doc. 130, p. 8.

Based on the record, Johnson has not demonstrated deficient performance by counsel, or that he was prejudiced by counsel's alleged failure to conduct an independent investigation. And, he has not met the heavy burden to overcome his admissions during the plea hearing. As such, claim 3 is denied.

### 4) *Failure to attempt to negotiate a more favorable plea agreement*

Johnson fails to offer any factual or legal basis for his claim that counsel was ineffective for failing to negotiate a better plea agreement. He fails to identify what more favorable terms counsel could have obtained, or how that could have been accomplished. Moreover, "[w]here a defendant has pled guilty, courts have rejected claims that defense counsel was ineffective for failing to secure a more favorable plea agreement." *Smotherman v. United States*, No. 12-03111-01-CR-S-DGK, 2016 WL 4491854, at *3 (W.D. Mo. Aug. 25, 2016) (citing *Estabrook v. United States*, No. 4:12–cv–050, 2012 WL 4981147, at *2 (D.N.D. Oct. 17, 2012) (collecting cases). For these reasons, claim 4 is denied.

### 5) *Failure to file substantive objections to the PSR*

For Johnson's claims pertaining to sentencing, he again complains of counsel's failure to challenge the weight of the drugs. That issue has been addressed and the

Court has determined there is no merit to the claim.  He also complains that although counsel filed an objection as to the career offender enhancement, he failed to stand his ground by conceding the issue.  However, counsel acted appropriately in acknowledging that under current Eighth Circuit law the enhancement applied.  Johnson does not point to any other alleged errors in the PSR, nor does he offer any other objections that he believes counsel should have made.  For these reasons, claim 5 is also denied.

## IV. CONCLUSION

Johnson casts myriad aspersions on counsel's performance but fails to support any of them with meaningful legal and factual arguments.  He has not demonstrated any errors by counsel that fall outside the wide range of reasonable professional assistance.  Nor has he established any prejudice that he suffered as a result of any alleged deficiencies in counsel's performance.  As a result, his claims of ineffective assistance of counsel fail both prongs of the *Strickland* test.

Finally, Johnson is not entitled to a hearing on the instant motion because his allegations are contradicted by the record, inherently incredible, and consists of speculation and conclusions.

**ACCORDINGLY,**

**IT IS HEREBY ORDERED** that the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody is **DENIED** without a hearing and this matter is **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of

appealability as to any of the claims raised in the § 2255 motion because petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2).

      **SO ORDERED** on this 3rd day of October, 2024.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE